UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| DAVID A. MOWERY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-502-HBG |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 22]. Now before the Court is the Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 19 & 20] and the Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 23 & 24]. David A. Mowery ("the Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** the Plaintiff's motion, and **GRANT** the Commissioner's motion.

**I.     PROCEDURAL HISTORY**

On December 13, 2012, the Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on November 15, 2011. [Tr. 553, 181-82]. After his application was denied

---

[1] During the pendency of this case, Nancy A. Berryhill replaced Acting Commissioner Carolyn W. Colvin. Pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted as the Defendant in this case.

initially and upon reconsideration, the Plaintiff requested a hearing before an ALJ. [Tr. 139]. Following a hearing [Tr. 68-94], the ALJ found the Plaintiff was "not disabled" [Tr. 53-63]. The Appeals Council ultimately denied the Plaintiff's request for review [Tr. 1-4], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, the Plaintiff filed a Complaint with this Court on August 11, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1].

## II.     STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

### III. ANALYSIS

Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four

and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. § 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. § 404.1545(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d 525. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

On appeal, the Plaintiff maintains that the ALJ's decision is not supported by substantial evidence. First, the Plaintiff contends that the ALJ failed to account for "moderate" mental limitations, opined by non-examining state agency sources, in assessing the Plaintiff's RFC. [Doc. 20 at 15-17]. Second, the Plaintiff submits that the ALJ did not properly weigh the medical opinions of his treating physician, William Robinson, M.D. [*Id.* at 18-19]. Next, the Plaintiff asserts that the ALJ did not properly consider and assess the Plaintiff's complaints of pain. [*Id.* at 19-21]. Lastly, the Plaintiff argues that the hypothetical question posed to a vocational expert ("VE") failed to account for all of the Plaintiff's mental limitations. [*Id.* at 16-17]. The Court will address each alleged error in turn.

1. **RFC - Mental Limitations**

The Plaintiff argues that the ALJ failed to properly consider numerous "moderate" mental limitations imposed by non-examining state agency sources Rebecca Joslin, Ed.D., and Marvin Blase, M.D. [Doc. 20 at 15-16]. In addition, the Plaintiff submits that the ALJ's reliance on treatment notes from treating physician, Dr. Robinson, to demonstrate the absence of concentration issues was error because "Plaintiff was never examined for concentration issues by Dr. Robinson." [*Id.*].

4

In relevant part, the ALJ determined that the Plaintiff has an RFC to "perform simple, routine, repetitive tasks, meaning that the [Plaintiff] can apply common sense understanding to carry out, oral, written, and diagrammatic instructions." [Tr. 58.] In addition, the Plaintiff "can frequently interact with the public and coworkers." [*Id.*]. In reaching this determination, the ALJ addressed, among other evidence, the medical opinions of non-examining state agency sources, Dr. Joslin and Dr. Blase. [Tr. 59-61]. The ALJ gave "some weight" to the opinions of both doctors. [*Id.*].

The Court finds that the ALJ properly considered the Plaintiff's mental limitations in determining the Plaintiff's RFC. The Court finds no merit in the Plaintiff's contention that the ALJ did not properly consider the "moderate" limitations opined by Dr. Joslin and Dr. Blase. In this regard, the Court observes that the "moderate" limitations the Plaintiff refers to are findings the doctors made in a Psychiatric Review Technique and non-RFC findings in a Mental Residual Functional Capacity Assessment.

As to the Psychiatric Review Technique, Social Security Ruling 96-8p explains that the technique "assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings." 1996 WL 374184, at *4 (July 2, 1996). The "limitations identified in the 'paragraph B' and 'paragraph C' criteria are *not* an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Id.* (emphasis added). It is well established that limitations opined with regard to the "paragraph B" and "paragraph C" criteria will not necesarily result in identical or even similar limitations within the RFC determination or subsequent steps of the sequential evaluation. *See Turbeville v. Colvin*, No. 1:12-CV-00061, 2014 WL 6605483, at *10 (M.D. Tenn. Nov. 19, 2014) ("[Step 3 and the RFC] are separate steps and a

5

finding at one step does not necessarily equate to the same finding being made at a later step."); *Pinkard v. Comm'r of Soc. Sec. Admin.*, No. 1:13CV1339, 2014 WL 3389206, at *10 (N.D. Ohio July 9, 2014) (finding that "the ALJ does not have to include paragraph B finding in his RFC finding" and concluding that "the ALJ was correct in finding that Plaintiff had moderate limitations in evaluating her mental impairment under the listings at step three of the sequential evaluation process, and in not including a 'moderate limitation in concentration, persistence, and pace' in his residual functional capacity finding at steps four and five"); *Bailey v. Astrue*, No. CIV.A. 10-227-JBC, 2011 WL 3880503, at *2 (E.D. Ky. Aug. 31, 2011)("The RFC assessment takes into account all of the relevant evidence in the case record, . . . and the ALJ was not required to specifically adopt 'paragraph B' findings in his development of a complete and accurate assessment of Bailey's mental impairment.") (citing Soc. Sec. Ru. 96-8p, 1996 WL 374184). Therefore, the Court finds that the ALJ was not required to include limitations identified in the Psychiatric Review Technique into the RFC.

With regard to the remaining "moderate" limitations cited by the Plaintiff, these limitations can be found in the Mental Residual Functional Capacity Assessments completed by the doctors. [Tr. 104-105, 120-121]. While the assessments opine on the Plaintiff's ability to perform different work related mental functions, the Plaintiff does not cite to actual RFC findings. Within the assessments, prior to making an RFC finding, a series of detailed questions are first asked to "help determine the individual's ability to perform sustained work activities." [Tr. 104, 120]. Importantly, this questionnaire section is not an RFC determination but rather a worksheet to help assess a claimant's RFC. [*Id.*]. The actual RFC finding is recorded at the end "in the narrative discussion(s)." [*Id.*]. The "moderate" limitations cited by the Plaintiff fall with the questionnaire section. The Plaintiff has not cited, and the Court is not aware of, any regulation, agency ruling,

or case law that would require the ALJ to specifically assess or adopt any of the limitations opined therein which, again, are not RFC findings.

Accordingly, the ALJ was only required to, and indeed did, consider the RFC findings made by Dr. Joslin and Dr. Blase. The doctors rendered identical opinions in their respective Mental Residual Functional Capacity Assessments as follows: the Plaintiff could understand and recall simple instructions and work locations; he could perform simple tasks and sustain adequate concentration, persistence, and pace throughout the workday; he could function in a position that did not require relating to the public and could sufficiently handle interaction with coworkers; and he could avoid hazards and adopt to workplace changes but would function best in a workplace setting with defined workplace tasks and not be required to develop independent workplace goals. [Tr. 106, 122]. The ALJ considered Dr. Joslin's and Dr. Blase's opinions, assigned them "some weight," and explained his reasons for the weight assigned. [Doc. 60-61]. The Court finds no error in the ALJ's consideration of Dr. Joslin's and Dr. Blase's mental limitations.

The Court also finds no merit in the Plaintiff's arguments regarding treating physician, Dr. Robinson. In support of his contention that the ALJ did not properly consider his "moderate" mental limitations, the Plaintiff first complains that the ALJ erroneously relied on Dr. Robinson's treatment notes in "essentially" concluding that the Plaintiff "had no such problems" with concentration. [Doc. 20 at 15]. The Plaintiff's argument is without merit. First, the ALJ relied on Dr. Robinson's treatment notes at step three in assessing the Plaintiff's concentration, persistence, and pace under the "paragraph B" criteria. [Tr. 57]. At step three, the ALJ specifically found that the Plaintiff had "moderate difficulties" in this area. [*Id.*]. Thus, Dr. Robinson's treatment notes assisted the ALJ in finding moderate limitations. Second, the ALJ did not rely on Dr. Robinson's treatment notes to conclude the Plaintiff "had no such problems" in concentration,

7

as the Plaintiff claims. To the contrary, the ALJ concluded that the Plaintiff had "moderate difficulties," and Dr. Robinson's treatment notes "did not exhibit *significant* difficulties with concentration." [Tr. 57] (emphasis added). The Plaintiff also argues that the ALJ could not rely on Dr. Robinson's treatment notes because the doctor "never examined [the Plaintiff] for concentration issues." [Doc. 20 at 15]. Dr. Robinson did treat the Plaintiff's complaints of anxiety and depression, and examination findings typically documented normal insight, judgment, mood, effect, and orientation, as well as intact recent and remote memory. [Tr. 414, 471, 486, 493, 525, 530, 534]. Given Dr. Robinson's treatment and examination findings, the Court finds that it was reasonable for the ALJ to conclude that the Plaintiff "did not exhibit significant difficulties with concentration."

Accordingly, the Court finds that the ALJ properly considered the Plaintiff's mental limitations in assessing the Plaintiff's RFC.

### 2. Opinions of Treating Physician Williams Robinson, M.D.

The Plaintiff submits that the ALJ committed reversible error by failing to assign controlling weight to Dr. Robinson's opinions.

On March 28, 2014, Dr. Robinson completed a "Treating Source Statement Physician Capacities Evaluation," wherein he responded to multiple-choice questions regarding the Plaintiff's physical capacity to perform different work-related activities. [Tr. 480-81]. Therein, Dr. Robinson opined that the Plaintiff could sit for three hours at one time and up to five hours total, and he could stand and walk for one hour at one time and stand or walk up to two hours total. [Tr. 480]. He could use his hands for repetitive actions, such as simple grasping, pushing and pulling, and fine manipulation, but could not use his feet or legs for repetitive movements, such as operating foot controls. [*Id.*]. As to lifting, the Plaintiff could constantly lift up to four pounds,

8

frequently lift between five and 19 pounds, occasionally lift 20 to 49 pounds, and rarely lift 50 to 100 pounds. [*Id.*]. With regard to carrying, he could constantly carry up to four pounds, frequently carry five to nine pounds, occasionally carry 10 to 19 pounds, rarely carry 20 to 49 pounds, and never carry 50 pounds or more. [Tr. 481]. The Plaintiff could frequently reach above shoulder level, occasionally bend, rarely squat or climb, and never crawl. [*Id.*]. He had mild restrictions against driving automotive equipment, moderate restrictions against exposure to marked changes in temperature and humidity, dust, fumes, and gases, and was completely restricted against unprotected heights and moving machinery. [*Id.*]. Finally, Dr. Robinson indicated that the Plaintiff's pain was "moderately severe." [*Id.*].

Dr. Robinson also completed a second form on February 12, 2015, in connection with the Plaintiff's request for disability benefits from a private insurer. [Tr. 561-62]. Dr. Robinson documented the Plaintiff's reported symptoms of epigastric pain, lower extremity neuropathic pain, and low back pain. [Tr. 561]. He also noted diagnoses of chronic abdominal pain, diabetic peripheral neuropathy, and lumbar disc disease and documented examination findings of painful and decreased range of motion of the lumbar spine and decreased feeling in the lower extremities. [Tr. 561]. Dr. Robinson concluded that the Plaintiff cannot perform activities of daily living. [Tr. 562].

The ALJ assigned "little weight" to Dr. Robinson's opinions. [Tr. 60]. As to the March 28, 2014 treating source statement, the ALJ found the opinion did not provide any specific support for the limitations opined therein and there was no objective evidence in the record to support the standing, walking, and sitting limitations. [*Id.*]. As to the February 12, 2015 opinion, the ALJ found that Dr. Robinson did not provide any "specific reasons beyond pain and decreased feeling, which did not help assess what the claimant is actually capable of performing." [*Id.*].

9

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) is not inconsistent with the other substantial evidence in the case record, it must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). When an opinion does not garner controlling weight, the appropriate weight to be given to an opinion will be determined based upon the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. § 404.1527(c)(1)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for the weight given to a treating source's opinion in the decision. *Id.* A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. *See King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 992 (6th Cir. 2007).

The Court finds the ALJ provided "good reason," supported by the record, for assigning little weigh to Dr. Robinson's opinions. As to the February 12, 2015 opinion, the Plaintiff disagrees with the ALJ's finding that Dr. Robinson did not give any specific reasons for his opinion other than noting pain and decreased feeling. [Doc. 20 at 18]. The Plaintiff cites to his diagnoses

10

of chronic abdominal pain, diabetic peripheral neuropathy, and lumbar disc disease. [*Id.*]. However, a diagnosis alone says nothing about the severity of a condition. *Higgs*, 880 F.2d at 863. The Plaintiff further cites to his symptoms of pain and examining findings of decreased range of motion of the lumbar spine. [Doc. 20 at 18]. The ALJ, however, considered the opinion's report of pain and decreased feeling but reasonably observed that these findings do not translate into what the Plaintiff can and cannot do in functional terms. *See Carney v. Colvin*, No. 3:12-CV-00744, 2015 WL 5089783, at *8 (M.D. Tenn. Aug. 17, 2015) (upholding an ALJ's assignment of little weight to an examining source who "fails to give specifics as to what actual limitations were imposed on [the claimant's] functional ability").

As to the March 28, 2014 treating source statement, the Plaintiff argues that contrary to the ALJ's finding, Dr. Robinson's treatment notes and the record support the limitations opined. [Doc. 20 at 18]. The Plaintiff cites to various medical records, including radiographic films of the lumbar and lumbosacral spine, an upper gastrointestinal endoscopy, CT scans of the abdomen, pelvis, chest, and thorax, and an MRI of the brain and neck. [Tr. 271, 307, 402, 404, 423, 432, 536]. These imaging studies and diagnostic tests, however, almost exclusively document mild to unremarkable and normal findings. [*Id.*]. The Plaintiff also cites to "positive examination findings" by Dr. Robinson but findings include normal gait, station, muscle strength, and tone despite "abnormal" sensation. [Tr. 418-19]. Additionally, the Plaintiff cites to a referral to a gastroenterologist and numerous lab work-ups related to his diabetes. [Tr. 445, 473, 476, 501-03, 50-10, 519-20]. The Plaintiff does not explain the relevance of this evidence, how it undermines the ALJ's assignment of little weight, or supports the limitations opined by Dr. Robinson. In fact, the Plaintiff does not draw a connection between any of the medical evidence he cites and the functional limitations assessed by Dr. Robinson.

Finally, the Plaintiff suggests that the ALJ's RFC finding and overall decision denying benefits is not supported by substantial evidence because no medical opinion of record was given controlling weight. [Doc. 20 at 19]. A claimant's RFC, however, is a decision exclusively reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). "[T]o require the ALJ to base [his] RFC finding on a physician's opinion, would, in effect, confer upon the [medical] source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (internal quotation marks and citation omitted); *see Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) ("Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion.").

Therefore, the Court finds no merit in the Plaintiff's assignment of error in this regard.

### 3. Complaints of Pain

The Plaintiff also argues that the ALJ failed to correctly assess his pain, ignoring medical evidence documenting abdominal pain and pain caused from the Plaintiff's degenerative disc disease and peripheral neuropathy. [Doc. 20 at 19-20].

"An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability . . . ." 42 U.S.C. § 423(d)(5)(A). Our appellate court has established a two-step analysis for evaluating complaints of pain. "First, the ALJ must determine whether there is a medically determinable mental impairment that could reasonably be expected to produce the claimant's alleged pain and symptoms." *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 722 (6th Cir. 2012). At the second step, "the ALJ must consider whether the alleged intensity,

persistence, and limiting effects of the symptoms actually limit the claimant's ability to do work—which requires a credibility finding." *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir.2003)).

In the instant case, the ALJ determined that the medical record did not support the severity of pain alleged by the Plaintiff. [Tr. 59, 61]. The Court finds that substantial evidence supports the ALJ's finding. As to the Plaintiff's diabetic neuropathy, the ALJ observed that the neuropathy caused numbness and pain in the Plaintiff's extremities and abdomen, and the Plaintiff complained of difficulty walking. [Tr. 59]. However, physical examinations routinely noted normal muscle strength and tone, no peripheral edema, and normal gait and station despite decreased sensation in the lower extremities. [Tr. 59, 396, 405, 417, 469, 483, 496, 522-34]. Moreover, the Plaintiff generally had normal range of motion, although the ALJ noted that medical records documented decreased range of motion in the Plaintiff's right upper extremity beginning in October 2013 as well as complaints of a burning sensation in January 2015. [Tr. 59, 513, 522, 525].

The ALJ further considered the Plaintiff's lower back pain attributed to degenerative disc disease of the lumbar spine. [Tr. 59]. The ALJ discussed radiological imagining from November 2010 that confirmed minimal degenerative changes and mild scoliosis and tiny osteophytes [Tr. 59, 423, 432]. While the Plaintiff demonstrated some limited range of motion resulting from his lumbar spine abnormalities, the ALJ observed that the Plaintiff contemporaneously exhibited normal gait, station, and strength during the same physical examinations. [Tr. 59, 525, 530, 534].

The Court finds that the ALJ's findings are well within the "zone of choices" provided by the evidence. *See Blakley*, 581 F.3d at 406 (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and

that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted).

The Plaintiff argues that "even Dr. Summers," a consultative examiner, "found decreased range of motion in his lumbar spine and decreased sensation to touch in bilateral lower extremities. [Doc. 20 at 20 (citing Tr. 465)]. Yet, despite these examination findings, Dr. Summers also opined that Plaintiff could work from a seated position, operate hand and some foot controls, had full and unrestricted use of both upper extremities, could stand and walk for up to six hours, could lift up to 20 pounds, and would have difficulty bending, stooping, kneeling, squatting, crouching, crawling, and climbing. [Tr. 465]. The ALJ gave "significant weight" to Dr. Summers's opinion except his finding that the Plaintiff had full use of his upper extremities. [Tr. 60]. The ALJ, instead, concluded that the Plaintiff was more restricted and limited him to frequent use of his bilateral extremities. [Tr. 58, 60]. Thus, Dr. Summers's findings support the ALJ's pain assessment.

Accordingly, the Court finds the ALJ properly considered the Plaintiff's complaints of pain.

### 4. Hypothetical Question

Finally, the Plaintiff maintains that the ALJ's failure to properly consider his mental limitations resulted in the ALJ asking a VE hypothetical questions that did not accurately represent his functional abilities. [Doc. 20 at 16-17]. The Plaintiff maintains that the VE was not asked to consider the "moderate" limitations opined by Dr. Joslin, Dr. Blase, or consultative examiner, Kathryn Smith, Ph.D. [*Id.*]. As a result, the Plaintiff argues that the ALJ's reliance on the VE's testimony at step five of the sequential evaluation is not supported by substantial evidence. [*Id.*].

At step five, the ALJ relied on VE testimony to find that other work exists in the national economy that the Plaintiff can perform, including the jobs of small products assembler, housekeeping cleaner, and inspector and hand packager. [Tr. 62-63, 91-92]. During the hearing, the ALJ posed three different hypotheticals, one of which was based on Dr. Joslin's and Dr. Blase's RFC findings, and another which was based on Dr. Robinson's treating state source. [Tr. 89-93]. Ultimately, the ALJ relied on the VE's response to the hypothetical that incorporated Dr. Joslin's and Dr. Blase's RFC findings. [Tr. 62]. In the ALJ's decision, he explained that the VE testified to the existence of other work based on the Plaintiff's RFC, and the ALJ relied on such testimony in making his step five determination. [*Id.*]. The ALJ also explained that other hypothetical questions were posed to the VE that included limitations that were in addition, or different from, the RFC adopted in the decision, but that these other hypothetical questions "were necessarily posed to the [VE] at that time in the interest of administrative efficiency," and that the ALJ had subsequently found, based upon a review of the entire record, that these additional and different limitations were not supported by the evidence and therefore do not represent the Plaintiff's RFC as determined in the ALJ's decision. [Tr. 62-63]; *see Wagers v. Comm'r of Soc. Sec.*, No. 1:15-CV-312, 2016 WL 4211811, at *7 (S.D. Ohio June 28, 2016) ("It is common for an ALJ to elicit testimony from a VE using multiple hypotheticals, and later to issue an opinion based on only one of those hypotheticals, as the ALJ did in this case."), *adopted by*, No. 1:15CV312, 2016 WL 4194504 (S.D. Ohio Aug. 9, 2016); *Yeager v. Colvin*, No. 5:12CV02554, 2013 WL 6019204, at *10 (N.D. Ohio Nov. 13, 2013) ("Because ALJs do not know how they will decide a matter until the evidence of record is reviewed thoroughly, they often ask multiple hypotheticals.").

Having found that the ALJ properly considered the Plaintiff's mental limitations, Dr. Robinson's opinions, and the Plaintiff's complaints of pain, the Court finds the hypothetical

15

question posed to the VE that incorporated Dr. Joslin's and Dr. Blase' RFC findings, and the ALJ's reliance on the VE's response, was appropriate and constitutes substantial evidence at step five. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

As the Court has explained above, the "moderate" limitations the Plaintiff complains of with regard to Dr. Joslin and Dr. Blase are not RFC findings and were therefore properly excluded from the hypothetical questions. The Plaintiff's argument as to consultative examiner, Dr. Smith, fares no better. The Plaintiff complains that the VE was not asked to consider Dr. Smith's limitations that the Plaintiff was mildly-to-moderately limited in concentration, persistence, and ability to adapt to changes and requirements. [Doc. 20 at 16 (citing Tr. 461)]. The Court finds the Plaintiff's RFC, which limits him to simple, routine, and repetitive tasks, actually accommodates Dr. Smith's mild-to-moderate limitations. *See e.g.*, *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (holding that an RFC and hypothetical question that included "simple, routine, repetitive tasks" adequately conveyed the plaintiff's moderate limitation in concentration, persistence, and pace).

Therefore, the Court finds the Plaintiff's argument in this regard is not well-taken, and substantial evidence supports the ALJ's finding at step five.

## VI. CONCLUSION

Based on the foregoing, the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 19**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 23**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

_____
United States Magistrate Judge